IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CATHIANNA SNYDER ROSENTHAL, | Case No. 3:25-cv-00484-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| TALLON JOHNSTON *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Cathianna Snyder Rosenthal ("Rosenthal") filed this action against the Clackamas County Sheriff's Office, Clackamas County, Clackamas County Sheriff Angela Brandenburg ("Sheriff Brandenburg"), and Clackamas County Sheriff's Deputy Tallon Johnston ("Johnston") (together, "Defendants"), alleging constitutional claims under 42 U.S.C. § 1983 ("Section 1983"). The Court has jurisdiction over Rosenthal's claims pursuant to 28 U.S.C. § 1331, and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636.

///

///

PAGE 1 – OPINION AND ORDER

Now before the Court is Defendants' motion to dismiss Rosenthal's complaint. For the reasons that follow, the Court grants in part and denies in part Defendants' motion and dismisses Rosenthal's complaint with leave to amend.

## BACKGROUND[1]

Since he was fourteen years old, Rosenthal's son, Philip Snyder ("Snyder"), "suffered from . . . traumatic brain injury . . . [and] multiple other traumas." (Compl. at 4, ECF No. 1.) Snyder moved to Oregon in pursuit of work, but "wound up homeless in Clackamas County in crisis, unable to stabilize." (*Id.*)

In March 2023, Snyder "had no shelter, no phone, . . . was endangered and acting out . . . and had been listed as a missing person for [three] months." (*Id.*) On March 22, 2023, Snyder experienced a "stage [four] mental/medical crisis" and "was threatening death and suicide, publicly in front of a Target store in Happy Valley, Or[egon]." (*Id.*) Johnston "arrested/detained . . . Snyder and charged him with 'disorderly conduct.'" (*Id.*) "Johnston took [Snyder] to jail" where "[Snyder] received no medical/expert intervention and was released in the same order, in a day." (*Id.* at 5.) According to the medical examiner, Snyder died shortly after being released from custody. (*Id.*) "The medical examiner estimates that the cause of death [was] Fentanyl." (*Id.*)

Rosenthal began investigating Snyder's death and "spoke with . . . Johnston who told [her] that [Snyder] was threatening death on Mar[ch] 22, 2023 and that [Johnston] had taken him to the hospital[.]" (*Id.* at 5-6.) When she later called the Clackamas County Sheriff's Office,

---

[1] Rosenthal pleads these facts in her complaint, and the Court assumes they are true for the purpose of deciding this motion. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (noting that when reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party").

PAGE 2 – OPINION AND ORDER

however, "the lead night captain" informed Rosenthal that Snyder "was, in fact, not taken to a hospital but to a jail" and that "the reports show[ed] no medical/mental intervention/evaluation by any expert." (*Id.* at 6-7.) Rosenthal alleges that Snyder "was released in the same critical condition in a day" and that his "mental crisis had been dismissed or covered by the label of disorderly conduct." (*Id.* at 7.)

Based on these facts, Rosenthal alleges three Section 1983 claims: (1) a Fourteenth Amendment "due process" claim; (2) a Fourteenth Amendment "equal protection" claim; and (3) an Eighth Amendment "unusual punishment" claim. (*Id.* at 8.) Defendants move to dismiss Rosenthal's complaint on the grounds that she failed sufficiently to effect service of process on Defendants or to allege facts supporting a claim upon which relief can be granted. (*See generally* Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 6.)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Rule 12(b)(5)

Under Federal Rule of Civil Procedure ("Rule") 12(b)(5), a defendant may seek dismissal for "insufficient service of process." FED. R. CIV. P. 12(b)(5). "Once service is challenged, [the] plaintiff[ ] bear[s] the burden of establishing that service was valid." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "The court has broad discretion to dismiss an action for failure to effectuate service or quash the defective service and permit re-service." *Graves v. NW Priority Credit Union*, No. 3:20-cv-00770-JR, 2020 WL 8085140, at *1 (D. Or. Dec. 16, 2020) (citation omitted), *findings and recommendation adopted*, 2021 WL 96968 (D. Or. Jan. 9, 2021).

#### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

PAGE 3 – OPINION AND ORDER

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.    ANALYSIS

### A.    Insufficient Service

Defendants move to dismiss Rosenthal's complaint pursuant to Rule 12(b)(5) on the ground that Rosenthal failed sufficiently to serve process on Defendants. (*See* Defs.' Mot. at 5.) Rosenthal responds that she served Defendants "[i]n accordance with ORCP 7" by "mail[ing] each defendant . . . a certified copy of all filings along with certified return receipts." (Pl.'s Mot. Continue ("Pl.'s Resp.") at 1, ECF No. 9.) Rosenthal also attaches to her response copies of the certified mail receipts. (*See id.* at 3-4.)

#### 1.    Applicable Law

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with [Rule] 4." *Crowley v. Bannister*, 734 F.3d 967, 974-75 (9th Cir. 2013) (simplified). "Generally, a plaintiff may complete service on individual defendants under the Federal Rules of Civil Procedure by personal service on the individual, service to the defendant's home, or service upon the individual's service agent." *Kali v. Bulk Handling Sys.*, No. 6:18-cv-02010-AA, 2019 WL 1810966, at *2 (D. Or. Apr. 23, 2019) (citing FED. R. CIV. P. 4(e)(2)). "Additionally, service on individual defendants may be

PAGE 4 – OPINION AND ORDER

completed in conformance with state service rules." *Id.* (citing FED. R. CIV. P. 4(e)(1)). Here, the Court looks to Oregon law to determine whether service was proper because Rosenthal attempted to complete service by mail. *See id.* ("Since . . . the federal rules do not allow for service by mail, we must look to the Oregon Rules of Civil Procedure . . . to determine whether service was proper.").

In Oregon, there are two tests for adequacy of service. *See Baker v. Foy*, 797 P.2d 349, 353 (Or. 1990) (discussing the test for adequacy of service under Oregon law). First, if service is completed via a method described in Oregon Rule of Civil Procedure ("ORCP") 7, it is presumed effective. *See id.* Second, if service is not presumed effective, the Court must determine if service was nevertheless "reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend[.]" *Kali*, 2019 WL 1810966, at *3 (citing *Baker*, 797 P.2d at 353).

2.      **Analysis**

The Court finds that Rosenthal has failed properly to serve Defendants. Specifically, Rosenthal attempted to serve Defendants herself which is prohibited under both federal and state rules. *See* FED. R. CIV. P. 4(c)(2) ("Any person who is at least 18 years old and not a party may serve a summons and complaint."); OR. R. CIV. P. 7E ("A summons may be served by any competent person 18 years of age or older who is a resident of the state where service is made or of this state and is neither a party to the action . . . nor any party's officer, director, employee, or attorney[.]"); *see also Mongeon v. City of Portland*, No. 3:13-cv-02013-ST, 2015 WL 5129561, at *4 (D. Or. July 2, 2015) ("[The plaintiff] . . . served defendants by certified mail. Thus, [the plaintiff] failed to serve defendants through a non-party as required by [Rule] 4(c)(2). Accordingly, his service of process was ineffective."), *findings and recommendation adopted as modified*, 2015 WL 5130254 (D. Or. Sept. 1, 2015).

PAGE 5 – OPINION AND ORDER

In addition, Rosenthal attempted to effect service by certified mail pursuant to ORCP 7. (*See* Pl.'s Resp. at 1, "I showed the Clerk of the Court the certificate of service that I planned to use and was told that it was adequate . . . [i]n accordance with ORCP 7.") Service by certified mail alone, however, is insufficient under ORCP 7. *See* OR. R. CIV. P. 7D(2)(d)(i) ("[S]ervice by mail shall be made by mailing true copies of the summons and the complaint to the defendant by first class mail *and* by any of the following: certified, registered, or express mail with return receipt requested.") (emphasis added); *see also Hernandez v. Jefferson Cnty. Sheriff's Off.*, No. 3:19-cv-01404-JR, 2020 WL 3432549, at *4 (D. Or. June 23, 2020) ("Service under Oregon law requires more than only service by first class mail. It requires service by first class *and* registered or certified mail. Thus, Plaintiff's original sending of the summons and Complaint via first class mail to [the defendants] was not sufficient service under Oregon law.").

In light of Rosenthal's failure adequately to serve Defendants consistent with the federal or state rules of civil procedure, the Court must determine if service was nevertheless "reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend[.]" *Kali*, 2019 WL 1810966, at *3 (citing *Baker*, 797 P.2d at 353); *see also* OR. R. CIV. P. 7G ("Failure to comply with provisions of this rule relating to the form of a summons, issuance of a summons, or who may serve a summons shall not affect the validity of service of that summons or the existence of jurisdiction over the person if the court determines that the defendant received actual notice of the substance and pendency of the action.").

The Court finds that, under the circumstances, Rosenthal reasonably apprised Defendants "of the existence and pendency of the action and afford[ed them] a reasonable opportunity to appear and defend." *Kali*, 2019 WL 1810966, at *3 (citing *Baker*, 797 P.2d at 353). Specifically,

PAGE 6 – OPINION AND ORDER

all Defendants are represented by the same counsel who received actual notice of this action, timely appeared, and responded on the merits to Rosenthal's complaint after conferring with Rosenthal regarding the substance of Defendants' Motion. (*See* Defs.' Mot. at 1, "Undersigned counsel, representing defendants Deputy Tallon Johnston, Sheriff Angela Brandenburg, Clackamas County Sheriff's Department, and Clackamas County certifies that . . . the parties made a good faith effort through a telephone call to resolve the dispute and have been unable to do so.") For these reasons, the Court finds that Rosenthal's efforts to effect service were reasonably calculated, under the totality of the circumstances then known to her, to apprise Defendants of the pendency of the action. See *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1230-31 (D. Or. 2013) ("In this case, Plaintiff sent the summons and complaint to Defendants, return receipt requested. It does not appear that Plaintiff sent the summons and complaint by first-class mail, nor does it appear that either defendant signed the receipt for the certified mailing. As such, Plaintiff did not effect presumptively valid service on Defendants. Nevertheless, the Court concludes that Plaintiff's efforts to effect service were reasonably calculated, under the totality of the circumstances then known to him, to apprise Defendants of the pendency of the action. . . . [Thus], the Court concludes that the present motion should be decided on the merits.") (citations omitted); *Pergande v. Wood*, No. 6:10-cv-00690-TC, 2012 WL 4845555, at *1 (D. Or. Mar. 7, 2012) ("Assuming that there is a defect in service, any such defect could be cured by amendment. Defendants have appeared and responded on the merits and I find it is appropriate to decide the present motion on the merits.") (footnote omitted), *findings and recommendation adopted*, 2012 WL 4833244 (D. Or. Oct. 5, 2012).

      Accordingly, the Court denies Defendants' motion to dismiss Rosenthal's complaint on the ground that she failed adequately to serve Defendants.

PAGE 7 – OPINION AND ORDER

### B. Standing

Defendants move to dismiss Rosenthal's claims on the ground that she lacks Article III standing to assert her claims because she did not file this action as Snyder's personal representative. (*See* Defs.' Mot. at 5-6.) Specifically, Defendants argue that "Oregon state law authorizes a survival action by providing [a] procedure for bringing a cause of action upon the death of an injured person, however, only a personal representative may bring such an action" and "[s]ince plaintiff . . . has filed this action as an individual, not as a personal representative, this action must be dismissed." (*Id.* at 6, citing OR. REV. STAT. § 30.075.)

#### 1. Applicable Law

"The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). As the party "'invoking federal jurisdiction,' [the plaintiff] ha[s] the burden of establishing standing pursuant to Article III." *Id.* at 408 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

#### 2. Analysis

In the complaint, Rosenthal asserts Fourteenth Amendment "due process" and "equal protection" claims and an Eighth Amendment "unusual punishment" claim. (Compl. at 8.) Rosenthal does not specify whether her Fourteenth Amendment "due process" claim is a substantive or procedural due process claim. (*See id.*) Rosenthal alleges that "Defendants' conduct . . . acting under the color of law deprived Philip Snyder of his constitutional rights, privileges and immunities." (*Id.* at 8.)

To the extent Rosenthal seeks to assert claims on Snyder's behalf, the Court agrees that Rosenthal does not have standing to pursue those claims. Specifically, "Oregon's wrongful death statute confers standing solely on the personal representative of the estate to pursue a cause of

PAGE 8 – OPINION AND ORDER

action for the damages that flowed from an injury that resulted in death." *Kaady v. City of Sandy*, No. 3:06-cv-01269-PK, 2008 WL 5111101, at *14 (D. Or. Nov. 26, 2008) (finding that three of the plaintiffs did not have standing to assert Section 1983 claims on behalf of the decedent because they were not the personal representative of the decedent's estate); *see also id.* at *12 ("In both a survival cause of action and a wrongful death claim, the only proper plaintiff is the personal representative of the estate." (citing OR. REV. STAT. §§ 30.075(1), 30.020(1)). Rosenthal individually filed this action and does not allege that she is the personal representative of Snyder's estate. (*See generally* Compl.; *see also* Pl.'s Resp. at 2, arguing that a "plaintiff need not have formal standing as a personal representative to bring a 1983 claim.") Therefore, Rosenthal does not have standing to pursue claims on Snyder's behalf. *See id.* at *14 (finding that three of the plaintiffs did not have standing to assert Section 1983 claims on behalf of the decedent because they were not the personal representative of the decedent's estate).

However, Rosenthal also includes in her complaint a Fourteenth Amendment "due process" claim and seeks compensation for "loss of family relationships[.]" (Compl. at 8-9.) To the extent Rosenthal asserts a Fourteenth Amendment substantive due process claim based on an alleged violation of her right to familial association with her son, the Court finds that Rosenthal has standing to pursue that claim.[2] *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018) ("A decedent's parents and children generally have the right to assert substantive due process claims under the Fourteenth Amendment.") (citations omitted); *Piper v. Cabillo*, 670 F. App'x 507, 507 (9th Cir. 2016) ("[Section] 1983 allows a parent to recover damages for the

---

[2] For the reasons explained below, however, the Court dismisses Rosenthal's Fourteenth Amendment familial association claim because she names the individual defendants in their official capacity (and not their individual capacity) and fails sufficiently to allege that a policy, custom, or practice was the moving force behind the constitutional violation.

state's interference with the 'constitutionally protected liberty interest in the companionship and society of his or her child[.]'" (citing *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985))); *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991) ("The parents are proper plaintiffs, as concluded by the district court."); *cf. Sinclair v. City of Seattle*, 61 F.4th 674, 679-80 (9th Cir. 2023) ("Although [the plaintiff] brings this action to vindicate an alleged deprivation of her own right, . . . her theory of liability is a derivative of her son's underlying right: She alleges that the City violated her right to the companionship of her son by violating his right to be free from state-created danger."), *cert. denied*, 144 S. Ct. 88 (2023).

### C.     Proper Defendants

Defendants move to dismiss Rosenthal's claims against the Clackamas County Sheriff's Office on the ground that the Sheriff's Office is not a "person" within the meaning of Section 1983. (*See* Defs.' Mot. at 6.) Defendants also move to dismiss Rosenthal's claims against Sheriff Brandenburg in her official capacity on the ground that those claims are duplicative of Rosenthal's claims against Clackamas County. (*See id.* at 7.)

#### 1.     Clackamas County Sheriff's Office

##### a.     Applicable Law

"[L]ocal governmental unit[s] or municipalit[ies] can be sued as a 'person' under section 1983." *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978)). "Other types of governmental entities can only be sued if they are intended to be separate and distinct legal entities." *Lukens v. Portland Police Bureau*, No. 3:11-cv-00827-MO, 2011 WL 5999376, at *2 (D. Or. Nov. 29, 2011) (dismissing the Portland Police Bureau as a defendant, with prejudice, from Section 1983 claims because the police bureau is not a distinct entity capable of being sued (citing *Hervey*, 65 F.3d at 792)).

PAGE 10 – OPINION AND ORDER

Courts in this district have consistently dismissed claims against local law enforcement agencies because the plaintiffs should have filed against the city or county. *See, e.g.*, *Schoene v. Rasmussen*, No. 3:23-cv-01151-HZ, 2024 WL 2153589, at *8 (D. Or. May 14, 2024) ("[C]ourts in this district have held that local law enforcement agencies in Oregon were not intended to be separate and distinct legal entities and thus cannot be sued under [Section] 1983." (citing *Harris v. City of Portland Police Dep't*, No. 3:15-cv-00853-HZ, 2016 WL 740425, at *5 (D. Or. Feb. 24, 2016))); *Dombroski v. City of Salem*, No. 6:09-cv-06284-TC, 2012 WL 1035719, at *3 (D. Or. Mar. 26, 2012) (dismissing all federal and state law claims against the Salem Police Department because "Oregon, along with many other jurisdictions, has held that any claim of liability against a police department must be brought against the city itself" (citing *Keller v. City of Portland*, No. 3:98-cv-00263-ST, 1998 WL 1060222, at *3 (D. Or. Nov. 13, 1998))).

     **b. Analysis**

Rosenthal asserts the same claims against Clackamas County and the Clackamas County Sheriff's Office. (*See* Compl. at 1, listing the defendants to include the "Clackamas County Sheriff's Department" and the "County of Clackam[a]s, Oregon.") The Court finds that the proper defendant is Clackamas County, and therefore dismisses the Clackamas County Sheriff's Office. *See Schoene*, 2024 WL 2153589, at *8 ("[C]ourts in this district have held that local law enforcement agencies in Oregon were not intended to be separate and distinct legal entities and thus cannot be sued under § 1983."); *Pearson v. Clackamas County*, No. 3:24-cv-01017-SB, 2025 WL 1435060, at *3 (D. Or. May 19, 2025) (dismissing the Clackamas County Sheriff's Office, the Clackamas County Jail, and "Clackamas County Medical" as defendants because "the proper defendant to those claims is Clackamas County"); *Rean v. City of Portland*, No. 3:08-cv-01403-KI, 2009 WL 5066758, at *1 n.1 (D. Or. Dec. 16, 2009) ("Plaintiff also names the

PAGE 11 – OPINION AND ORDER

Multnomah County Department of Community Justice and the Multnomah County Sheriff's Office. Both are agencies of Multnomah County and are not proper defendants.").

### 2.    **Official Capacity**

Rosenthal indicates in the complaint that she is suing Sheriff Brandenburg and Johnston only in their official capacity. (*See* Compl. at 2, checking the "official capacity" box next to Sheriff Brandenburg and Johnston.) Rosenthal confirms in her response that "[t]he defendants Sheriff Brandenburg and Officer Johnston are being sued in their official capacity." (Pl.'s Resp. at 2.) Defendants move to dismiss Rosenthal's claims against Sheriff Brandenburg in her official capacity on the ground that those claims are duplicative of Rosenthal's claims against Clackamas County. (*See* Defs.' Mot. at 7.)

#### a.    **Applicable Law**

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citation omitted); *see also Sherman v. County of Maui*, 191 F. App'x 535, 537 (9th Cir. 2006) ("The district court properly recognized that [the plaintiff]'s claims for damages against County officials in their official capacity were effectively claims against the County itself, and thus the individual defendants were duplicative."); *cf. Graham*, 473 U.S. at 165 ("[Individual]-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (citations omitted).

PAGE 12 – OPINION AND ORDER

### b.     Analysis

The Court finds that Rosenthal's claims against Sheriff Brandenburg and Johnston in their official capacities are duplicative of her claims against Clackamas County. *See Ctr. for Bio-Ethical Reform*, 533 F.3d at 799 ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.") (citation omitted); *Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1089-90 (D. Or. 2021) (dismissing claims against the mayor and police chief as redundant because the plaintiff also named the city as a defendant (first citing *Ctr. for Bio-Ethical Reform*, 533 F.3d at 799; and then citing *Updike v. Clackamas County*, No. 3:15-cv-00723-SI, 2015 WL 7722410, at *4 (D. Or. Nov. 30, 2015))). Thus, the Court dismisses Sheriff Brandenburg and Johnston and addresses only Rosenthal's claims against Clackamas County. *See Jurgens v. Columbia County*, No. 3:22-cv-00300-IM, 2025 WL 563769, at *3 n.2 (D. Or. Feb. 20, 2025) ("The Court will dismiss the claims against the individual officers in their official capacities because they are duplicative of Plaintiff's claim against the County[.]").

### D.     Pleading Deficiencies

For the reasons discussed above, the Court construes Rosenthal's allegations as asserting a Fourteenth Amendment familial association claim against Clackamas County. (*See* Compl. at 8-9, asserting a Fourteenth Amendment "Due Process" claim and seeking compensation for "loss of family relationships[.]"); *see also Sherman*, 191 F. App'x at 537 ("[C]laims for damages against County officials in their official capacity [are] effectively claims against the County itself[.]"). Defendants move to dismiss Rosenthal's claim on the ground that "the Complaint is completely void of allegations to state a due process claim" (Defs.' Mot. at 11) and "there are no allegations regarding any Clackamas County policy constituting a 'longstanding practice or custom which constitutes the standard operating procedure.'" (*Id.* at 8) (citation omitted).

PAGE 13 – OPINION AND ORDER

1. **Applicable Law**

"Recovery for a violation of the [Fourteenth Amendment] right to familial association is generally contingent on the existence of an underlying constitutional violation." *Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016); *see also Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004) ("Since the claim of familial interference is directly related to all the other constitutional claims appealed by [the plaintiff], the other claims form an integral part of the claim relating to familial interference."). Thus, to state a viable Fourteenth Amendment familial association claim against Clackamas County, Rosenthal must sufficiently allege facts to support holding Clackamas County liable for violations of Snyder's constitutional rights.

   a. **Fourteenth Amendment**

The Fourteenth Amendment provides the applicable standard for evaluating the medical care of pretrial detainees. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (explaining that the Fourteenth Amendment provides the applicable standard for evaluating the medical care of pretrial detainees, while the Eighth Amendment provides the applicable standard for evaluating the medical care of adults in custody who have already been convicted). The Ninth Circuit identified "the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment":

   (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

   (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;

   (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

PAGE 14 – OPINION AND ORDER

>   (iv)   by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018).

### b.      Municipal Liability

"*Monell* established that municipalities can be liable for infringement of constitutional rights, under certain circumstances." Horton v. City of Santa Maria, 915 F.3d 592, 602 (9th Cir. 2019) (citing *Monell*, 436 U.S. at 690-95). "[M]unicipalities may be liable under [Section] 1983 for constitutional injuries pursuant to: (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Id.* at 602-03. "To establish *Monell* liability, Plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiffs' constitutional rights; and (4) the policy, custom, or practice was the 'moving force' behind the constitutional violation." Cantu v. City of Portland, No. 3:19-cv-01606-SB, 2020 WL 2952972, at *3 (D. Or. June 3, 2020) (citing Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011)).

A plaintiff may establish that the policy, custom, or practice was the cause of injury in three ways: (1) "a [municipal] employee committed the alleged constitutional violation pursuant to [either] a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (simplified).

PAGE 15 – OPINION AND ORDER

Further, "[w]hen inadequate training is the basis of a *Monell* claim, liability arises 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact.'" *Barror v. City of St. Helens*, No. 3:20-cv-00731-SB, 2023 WL 5350755, at *1 (D. Or. Aug. 18, 2023) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Deliberate indifference can be established in three ways[: f]irst, the municipality made 'a conscious or deliberate choice' not to train its officers by 'disregard[ing] the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights.'" *Id.* (quoting *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158-59 (9th Cir. 2014)). "Second, 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recuring situations,' especially when there is a high likelihood 'that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* (quoting *Brown*, 520 U.S. at 409). "Third, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the moving force behind the plaintiff's injury." *Id.* at *2 (simplified).

2.     Analysis

Rosenthal alleges that the constitutional violation "is/was a direct result of the policies, usage, customs, practices, training/lack, inaction, action, supervision/lack of the County of Clackam[a]s[.]" (Compl. at 7.) Defendants move to dismiss Rosenthal's claim on the ground that "there are no allegations regarding any Clackamas County policy constituting a 'longstanding practice or custom which constitutes the standard operating procedure.'" (Defs.' Mot. at 8) (citation omitted).

PAGE 16 – OPINION AND ORDER

...

### a.   Unlawful Policy or Custom

The Court finds that Rosenthal has failed sufficiently to allege facts supporting that Defendants violated Snyder's constitutional rights "pursuant to . . . a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Gillette*, 979 F.2d at 1346 (simplified). Specifically, Rosenthal fails to allege specific facts relating to the existence or nature of any formal policy or persistent practice within Clackamas County. Nor does Rosenthal identify any examples outside of her own where Clackamas County personnel failed adequately to provide pretrial detainees with adequate mental health care. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (simplified).

### b.   Failure to Train, Supervise, or Discipline

The Court also finds that Rosenthal fails to allege facts supporting a reasonable inference that any Clackamas County Sheriff's Office supervisor or official was deliberately indifferent in their alleged failure to train, supervise, or discipline deputies. *Cf. Elifritz v. Fender*, 460 F. Supp. 3d 1088, 1119-20 (D. Or. 2020) (granting summary judgment in favor of the City of Portland because the plaintiff "offered no evidence that [the Portland Police Bureau] was deliberately indifferent to the need to train and supervise its officers" and the plaintiff "has not pointed to any category of inadequate training or explained how the training that [the Portland Police Bureau] gave its officers fell so short of adequately protecting the constitutional rights of the City's residents that it amounted to deliberate indifference"). Nor does Rosenthal allege facts supporting past instances of repeated constitutional violations for which the errant personnel within the Clackamas County Sheriff's Office were not discharged or reprimanded. *See Gillette*,

PAGE 17 – OPINION AND ORDER

979 F.2d at 1349 ("A [S]ection 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded."); see also *Caputo v. City of San Diego Police Dep't*, No. 3:16-cv-00943, 2018 WL 4092010, at *7 (S.D. Cal. Aug. 28, 2018) (dismissing *Monell* claim and reasoning that "to the extent that [the p]laintiff is attempting to allege a failure to train, the broad conclusion [that there was a lack of training] does not sufficiently state a plausible *Monell* claim [because] the complaint does not explain how the training with respect to arresting and treating individuals with disabilities was deficient or inadequate"); *Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1078 (E.D. Cal. Apr. 10, 2018) ("In order to show that a failure to train amounts to deliberate indifference, it is 'ordinarily necessary' to demonstrate 'a pattern of similar constitutional violations by untrained employees.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011))).

For these reasons, the Court finds that Rosenthal has failed to state a claim upon which relief can be granted against Clackamas County. See *Dougherty*, 654 F.3d at 900 ("A government entity may not be held liable under [Section] 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." (citing *Monell*, 436 U.S. at 694)); see also *Sills v. Kim*, No. 1:23-cv-00246, 2024 WL 3274292, at *5 (D. Haw. July 1, 2024) ("Here, the FAC does not provide factual allegations sufficient to support any [*Monell*] theories of liability. It lays out no factual allegations regarding an official County policy or custom of unlawful [conduct], a final County policymaker's ratification of [the defendant]'s conduct or the basis for it, or a failure to train [the defendant] on the Constitution's requirements. Nor does the FAC provide a factual basis to believe that any policy, custom, or failure to train caused [the plaintiff]'s alleged constitutional deprivation. The

Court therefore DISMISSES [the plaintiff]'s official capacity claim against [the defendant], which is effectively against the County.").[3]

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss (ECF No. 6) and dismisses Rosenthal's complaint with leave to amend. If Rosenthal believes she can cure the pleading deficiencies discussed herein, she may file an amended complaint by August 18, 2025.

**IT IS SO ORDERED.**

DATED this 17th day of July, 2025.

*[signature: Stacie F. Beckerman]*

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[3] Rosenthal includes with her response a request to toll the applicable statute of limitations. (*See generally* Mot. Move Stat. Limitations, ECF No. 10.) The Court denies that request as unnecessary because Defendants have not alleged that Rosenthal's claims are time barred.