IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CATHIANNA SNYDER ROSENTHAL, | Case No. 3:25-cv-00484-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| OFFICER TALLON JOHNSTON & CLACKAMAS COUNTY, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Cathianna Snyder Rosenthal ("Rosenthal") filed this action against Clackamas County and Clackamas County Sheriff's Deputy Tallon Johnston ("Deputy Johnston") (together, "Defendants"), alleging constitutional claims under 42 U.S.C. § 1983 ("Section 1983"). The Court has jurisdiction over Rosenthal's claims pursuant to 28 U.S.C. § 1331.

Now before the Court is Defendants' motion to dismiss Rosenthal's amended complaint. For the reasons that follow, the Court grants in part Defendants' motion to dismiss.

///

///

///

PAGE 1 – OPINION AND ORDER

# BACKGROUND[1]

## I. FACTUAL ALLEGATIONS

Rosenthal's claims arise from the alleged "complete lack of medical treatment/evaluation [that] Phillip Snyder ("Snyder") endured as a pretrial detainee" in Clackamas County. (Am. Compl. ("FAC") at 11, ECF No. 21.) Rosenthal is Snyder's mother. (*Id*.)

Following an episode outside a Target store in Happy Valley, Oregon, on March 22, 2023, during which Snyder was holding a knife and baton and yelling "kill! kill! kill!," Deputy Johnston arrested Snyder for disorderly conduct. (*Id*. at 11, 13, 15.) Rosenthal alleges that Snyder "was in stage [four] mental or intellectual incapacity, delusion, derangement, confusion and or function" and was "experiencing a high level of distress, confusion and disorientation[,]" which were all "symptoms of [his] [t]raumatic [b]rain [i]njury." (*Id*. at 15.)

Rosenthal alleges that Deputy Johnston should have sought mental health care for Snyder but instead transported him to the Clackamas County Jail. (*Id*. at 21.) Rosenthal alleges that while at the jail, Snyder was not evaluated by a mental health professional, but was instead "force-released" on the same day based on a financial decision rather than a risk-based assessment. (*Id*. at 13, 21, 30, 33.) Snyder died of a fentanyl overdose within a day of release. (*See* Compl. at 5, ECF No. 1.)

## II. PROCEDURAL HISTORY

On May 13, 2025, the Court granted in part and denied in part Defendants' motion to dismiss Rosenthal's original complaint, and granted Rosenthal leave to amend. (Op. & Order, ECF No. 18.) On August 19, 2025, Rosenthal filed an amended complaint. (*See generally* FAC.)

---

[1] "Except where otherwise stated, these facts are taken from [the plaintiff]'s complaint and are accepted as true." *Hebrard v. Nofziger*, 90 F.4th 1000, 1004 n.1 (9th Cir. 2024) (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 n.2 (9th Cir. 1992)).

On September 11, 2025, Defendants filed a motion to dismiss the FAC for failure to state a claim. (Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 24.) Rosenthal responded (Pl.'s Resp. Opp'n Defs.' Mot., ECF No. 25), Defendants replied (Defs.' Reply, ECF No. 26), and Rosenthal filed an exhibit in support of her response. (Pl.'s Ex., ECF No. 28.)

## LEGAL STANDARDS

### I. FAILURE TO STATE A CLAIM

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### II. SELF-REPRESENTED LITIGANTS

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021), and should treat "pro se litigants . . . with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). The Supreme Court, however, has also recognized that "[d]istrict [courts] have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231

PAGE 3 – OPINION AND ORDER

(2004). Thus, there are limits on the leeway that courts must afford to self-represented litigants. *See Washington v. Kijakazi*, 72 F.4th 1029, 1039-40 (9th Cir. 2023) ("[T]here are limits to what a court must do to accommodate a party appearing pro se." (citing *Pliler*, 542 U.S. at 231)); *see also Atkins v. Montgomery*, No. 20-56007, 2024 WL 3594386, at *2 (9th Cir. July 31, 2024) (rejecting the self-represented plaintiff's arguments that the magistrate judge failed to provide "meaningful assistance" on exhaustion, or "take into account the amount of time remaining on [his] one-year statute of limitations in requiring a response to her order" (citing *Pliler*, 542 U.S. at 231)).

For example, "[a]lthough [courts] construe pro se pleadings liberally, especially in civil rights cases, [they] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)); *Salazar v. Regents of Univ. of Cal.*, 812 F. App'x 410, 412-13 (9th Cir. 2020) (same); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (observing that a court's "liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled") (simplified).

## DISCUSSION

### I.   STANDING

In the FAC, Rosenthal alleges constitutional claims on behalf of Snyder, as well as a Fourteenth Amendment substantive due process claim on her own behalf for loss of familial association. (*See* FAC at 11-12.) Defendants move to dismiss Rosenthal's claims filed on behalf of Snyder on the ground that Rosenthal lacks standing. (Defs.' Mot. at 4-5.)

///

**A.     Applicable Law**

"The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). As the party "'invoking federal jurisdiction,' [the plaintiff] ha[s] the burden of establishing standing pursuant to Article III."[2] *Id.* at 408 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

**B.     Analysis**

The Court agrees that Rosenthal does not have standing to pursue claims on behalf of Snyder or his estate at this time.

"Oregon's wrongful death statute confers standing solely on the personal representative of the estate to pursue a cause of action for the damages that flowed from an injury that resulted in death." *Kaady v. City of Sandy*, No. 3:06-cv-01269-PK, 2008 WL 5111101, at *14 (D. Or. Nov. 26, 2008) (finding that three of the plaintiffs did not have standing to assert Section 1983 claims on behalf of the decedent because they were not the personal representative of the decedent's estate); *see also* OR. REV. STAT. § 30.075(1) ("Causes of action arising out of injuries to a person, caused by the wrongful act or omission of another, shall not abate upon the death of the injured person, and the personal representatives of the decedent may maintain an action

---

[2] The Ninth Circuit has explained that "[b]ecause standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under . . . [Rule] 12(b)(1), not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citations omitted). Even if Defendants were required to raise a challenge to Rosenthal's standing under Rule 12(b)(1), the Court may address the issue sua sponte and apply the Rule 12(b)(6) rubric in these circumstances. *See, e.g.*, *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1149-50 (9th Cir. 2024) (considering sua sponte standing elements that the district court did not address and "under the 12(b)(6) rubric, which [courts] apply to a facial challenge to jurisdiction," because the defendants "did not submit evidence in support of their Rule 12(b)(1) motion," and finding that the plaintiff "plausibly allege[d]" the remaining standing elements).

against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission.").

In its prior opinion, the Court concluded that Rosenthal lacked standing to pursue claims on Snyder's behalf because "Oregon's wrongful death statute confers standing solely on the personal representative of the estate to pursue a cause of action for the damages that flowed from an injury that resulted in death" and Rosenthal did not allege that she had been appointed as the personal representative of Snyder's estate. (*See* Op. & Order at 8, quoting *Kaady*, 2008 WL 5111101, at *14.) In her FAC, Rosenthal now alleges that the Chancery Court of Coffee County, Tennessee (the "Tennessee Court"), appointed Rosenthal to serve as the personal representative of Snyder's estate. (FAC at 11, 122.) Following briefing on the instant motion, Rosenthal filed "letters of administration ad litem" that the Tennessee Court signed on October 21, 2025, which purport to "authorize and empower" Rosenthal "to serve as [a]dministrator *ad litem*" for the "sole duty and function . . . to serve as nominal defendant for the purpose of pursuing a lawsuit" on behalf of Snyder. (Pl.'s Ex. at 2.)

Federal Rule of Civil Procedure 17(b) provides that the capacity of an individual to sue or be sued is determined "by the law of the state where the court is located[.]" FED. R. CIV. P. 17(b). The venue provision in Oregon's probate code provides that "[t]he venue for a proceeding seeking the appointment of a personal representative" is either the county where the decedent had a domicile, place of abode, or property at the time of death, the county in which the decedent died, or "the county where a personal injury claim or wrongful death claim . . . could be maintained." OR. REV. STAT. § 113.015(1).

The Ninth Circuit, applying Oregon law, has recognized that personal representatives or administrators appointed by state courts outside of Oregon do not have standing to bring a

PAGE 6 – OPINION AND ORDER

wrongful death or personal injury action in Oregon on behalf of the decedent's estate. *See, e.g.*, *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 49 (9th Cir. 1972) ("Under the law of Oregon in effect at the time this action was commenced, plaintiff, as executrix of a foreign estate, lacked the capacity to bring this action in the courts of Oregon and, consequently, had no capacity to bring this diversity action in the District Court for the District of Oregon." (citing *Pantano v. United Med. Lab'ys, Inc.*, 456 F.2d 1248 (9th Cir. 1972))); *Pantano*, 456 F.2d at 1250 ("Based upon these decisions of the Oregon Supreme Court, the Oregon District Court in *Gidinski v. McWilliams*, 308 F. Supp. 772 (D. Or. 1970) held that an administrator who was a resident and citizen of British Columbia had no standing to bring an action in the District Court for the District of Oregon. We agree with the decision in the *Gidinski* case and the order below therefore must be [a]ffirmed."); *see also Gidinski*, 308 F. Supp. at 774 ("Recent decisions by the Oregon Supreme Court . . . suggest that, if faced with the question of the capacity of a foreign administrator to sue, the Oregon court would strictly construe [the relevant Oregon statute], and would deny a foreign administrator capacity to bring an action of the type now before this court." (first citing *Wink v. Marshall*, 392 P.2d 768 (Or. 1964); and then citing *Richard v. Slate*, 396 P.2d 900 (Or. 1964))); *cf. Hassanati v. Int'l Lease Fin. Corp.,* 51 F. Supp. 3d 887, 897 (C.D. Cal. 2014) (holding that "California follows the common law rule that a personal representative cannot sue in his or her representative capacity outside the state of appointment"), *aff'd*, 643 F. App'x 620 (9th Cir. 2016).

In light of this requirement, Oregon law allows a beneficiary, interested person, or personal representative to "petition for the appointment of a personal representative" in Oregon "for the sole purpose of pursuing a claim for the wrongful death of the decedent." OR. REV. STAT. § 114.453 (requiring applicants to include, *inter alia*, the names and contact information of

PAGE 7 – OPINION AND ORDER

beneficiaries). It does not appear that Rosenthal has sought or obtained appointment from an Oregon court to serve as the personal representative of Snyder's estate.

Accordingly, Rosenthal currently lacks standing to prosecute claims on behalf of Snyder's estate, and the Court dismisses Rosenthal's claims filed on Snyder's behalf without prejudice to amending her complaint to include those claims if an appropriate Oregon court appoints her to serve as the personal representative of Snyder's estate.[3]

## II.     LEGAL REPRESENTATION

Rosenthal's disclosure in the FAC that there are other potential beneficiaries to Snyder's estate raises an important issue that the Court must address before this litigation proceeds. (*See* FAC at 14, "I amended this complaint as the personal representative of [Snyder], elected by the seven remaining members of his immediate family.")

"Where, as here, an estate has multiple beneficiaries [or] creditors, an attorney must represent a personal representative before the court." *Est. of Sharp ex rel. Sharp v. Callahan*, No. 3:12-cv-00605-TC, 2012 WL 6480845, at *1 (D. Or. Nov. 21, 2012) (citing *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008)), *findings and recommendation adopted*, 2012 WL 6217530, at *1 (D. Or. Dec. 11, 2012); *cf. Bass v. Leatherwood*, 788 F.3d 228, 230 (6th Cir. 2015) (holding that a "sole beneficiary of an estate without creditors may represent the estate pro se," noting that a sister circuit had similarly held that an "administrator and sole beneficiary of an estate with no creditors . . . may appear pro se on behalf of the estate," and explaining that the rule against non-lawyer representation has "no role to play when the only person affected by a nonattorney's representation is the nonattorney herself," i.e., the rule does not apply in situations

---

[3] *See Fleck & Assocs., Inc. v. Phx., City of, an Ariz. Mun. Corp.*, 471 F.3d 1100, 1107 (9th Cir. 2006) (explaining that "dismissal for want of standing must be 'without prejudice'") (citation omitted).

that fail to present concerns about "an ill-equipped layperson . . . squandering the rights of the party he purports to represent") (citations omitted).

Other decisions from this district are in accord. *See, e.g.*, *Est. of Duncan v. Wallowa Cnty. Sheriff's Dep't*, No. 2:19-cv-02017-SU, 2020 WL 13749990, at *1-2, *8-12 (D. Or. Oct. 27, 2020) (dismissing without prejudice the self-represented plaintiff's "action for civil rights violations and a wrongful death claim" so that he could "seek the assistance of an attorney to represent [his son's] [e]state," and explaining that the plaintiff was attempting to proceed "individually and as the personal representative" for his son's estate and that the plaintiff could not "represent the [e]state in federal court in a pro se capacity" because he was "not the only beneficiary of [his son's] [e]state"), *findings and recommendation adopted*, 2020 WL 13750038, at *1-2 (D. Or. Nov. 19, 2020); *see also Allinger v. U.S. Fed. Gov't*, No. 3:24-cv-01367-SB, 2024 WL 4545868, at *6-7 (D. Or. Aug. 27, 2024) (noting that the self-represented plaintiff was "effectively attempting to represent herself, the estate, and heirs or beneficiaries" but the legal authorities cited therein, including *Duncan*, demonstrated that the plaintiff could "not do so" and therefore "[t]he 'proper course' . . . [was] dismissal without prejudice . . . , which [would] allow [the plaintiff] and [her] family to secure the assistance of an attorney and pursue any potential claims"), *findings and recommendation adopted*, 2024 WL 4544307, at *1 (D. Or. Oct. 21, 2024).

Accordingly, if an appropriate Oregon court appoints Rosenthal to serve as the personal representative of Snyder's estate and she chooses to amend her complaint to reassert claims on behalf of Snyder's estate as the appointed personal representative, Rosenthal must retain counsel to represent her as the personal representative of the estate for those claims to proceed.

///

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART Defendants' motion to dismiss (ECF No. 24), and dismisses Rosenthal's claims filed on behalf of Snyder's estate.

The Court STAYS this case for forty-five (45) days to allow Rosenthal an opportunity to seek appointment from an appropriate Oregon court to serve as the personal representative of Snyder's estate and to retain counsel to represent her as the personal representative of the estate. If Rosenthal takes those steps, she may file a second amended complaint by February 6, 2026. The Court advises Rosenthal that her second amended complaint will operate as a complete substitute for the original and first amended complaints, not as a supplement.

Alternatively, if Rosenthal elects not to seek appointment as personal representative or retain counsel and opts not to file a second amended complaint by February 6, 2026, this case will proceed on Rosenthal's Fourteenth Amendment familial association claim only and the Court will take Defendants' motion to dismiss that claim under advisement on February 6, 2026.

**IT IS SO ORDERED.**

DATED this 23rd day of December, 2025.

*Stacie F. Beckerman*
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge